LAKE POINTE TOWNHOMES HOMEOWNERS' ASSOCIATION, Appellee,

v.

BRUCE, Appellant.

[Cite as *Lake Pointe Townhomes Homeowners' Assn. v. Bruce*, 178 Ohio App.3d 756, 2008-Ohio-5264.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90816.

Decided Oct. 9, 2008.

---

21. See Civ.R. 23(A)(4).

22. *Petty v. Wal-Mart Stores, Inc.* (2002), 148 Ohio App.3d 348, 356, 773 N.E.2d 576.

Kaman & Cusimano, Cullen J. Cottle, and Robert E. Kmiecik, for appellee.

Joseph W. Diemert Jr. & Associates Co., L.P.A., Joseph W. Diemert Jr., and Diane A. Calta, for appellant.

MELODY J. STEWART, Judge.

{¶ 1} Defendant-appellant, David Bruce, appeals from an order requiring him to pay attorney fees of $3,215.25 to plaintiff-appellee Lake Pointe Townhomes Homeowners' Association. His sole assignment of error complains that the court erred by ordering him to pay the association's attorney fees in the absence of any finding that he committed predicate acts that would invoke the fee provisions of his homeowner's agreement.

I

{¶ 2} The association brought this action against Bruce, a condominium owner at Lake Pointe, seeking to have him remove a skate ramp he had installed in his backyard. Invoking Declaration Article VII, Section 7.2 of the association's code of regulations, the association alleged that Bruce's skate ramp constituted an unapproved alteration or modification of his landscaping. The association also alleged that the skate ramp constituted a nuisance in violation of Declaration Article VI, Section 6.4.

{¶ 3} The parties settled the action by way of a judgment entry filed by the court. Bruce agreed to remove the skateboard ramp, and the parties also agreed "to submit to this court the issue as to whether or not any attorneys' fees and

costs shall be paid by David Bruce and, if so, the amount, all of which shall be determined by further order of this Court."

{¶ 4} The association filed a motion for attorney fees, arguing that its code of regulations not only gave it the right to file suit to enjoin any violations of the regulations, but that "the Owner or Occupant responsible for the violation of which abatement is sought shall pay all costs, including reasonable attorney fees incurred by the Association in so acting to enforce such rights." Bruce opposed the motion for attorney fees by arguing that the association's regulations were unenforceable against him and that even if they were enforceable, that the association failed to show he committed any violation of the regulations.

{¶ 5} The court held that Bruce was bound by the association's regulations because they had been validly recorded when the deed to the property had transferred to Bruce. After citing the attorney-fees section of the regulations, the court stated:

{¶ 6} "The court did not have an opportunity to render a decision on the question of whether defendant violated the association's regulations because the parties reached an agreement prior to trial whereby the defendant agreed to voluntarily remove the condition that the association considered a nuisance. The nuisance complained of was a skateboard ramp encompassing defendant's entire backyard. As part of the agreement to voluntarily remove the skate ramp, the parties agreed to submit the issue of attorney fees to the court. Although there was no finding by the court that defendant violated any of the association's provisions, the court finds that the association was required to expend a considerable amount of time and effort before defendant agreed to comply with the terms of the association's declarations."

{¶ 7} The court reviewed the amount of the association's request for attorney fees in accordance with Rule 1.5 of the Ohio Rules of Professional Conduct and awarded just half of the association's requested fees.

## II

{¶ 8} Ohio adheres to the "American rule" concerning attorney fees. That rule states that the parties involved in litigation are generally expected to pay their own attorney fees absent a statute or rule authorizing an award of attorney fees as costs. *State ex rel. Grosser v. Boy* (1976), 46 Ohio St.2d 184, 185, 75 O.O.2d 228, 347 N.E.2d 539. Parties to a contract may, however, enter into an agreement that provides for the recovery of attorney fees in the event of a dispute requiring legal intervention. In *Nottingdale Homeowners' Assn. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702, the syllabus states:

{¶ 9} "Provisions contained within a declaration of condominium ownership and/or condominium by-laws requiring that a defaulting unit owner be responsible for the payment of attorney fees incurred by the unit owners' association in either a collection action or a foreclosure action against the defaulting unit owner for unpaid common assessments are enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case."

{¶ 10} Because the association's right to attorney fees is governed by the homeowner's agreement, it is contractual in nature. We interpret the terms of contracts as a matter of law. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. When the contract provides for attorney fees but does not specify the amount of fees that are awardable, the trial court has discretion to determine the amount of fees reasonably necessary under the circumstances.

### III

{¶ 11} Bruce first argues that the association's regulations were not binding on him because he did not receive a copy of the regulations at the time he purchased his property. His brief in opposition to the association's motion for attorney fees contained a letter from the association to the developer in which the association said, "New Home Owners do not have a copy of the Association Legal Papers. Everyone needs their own copy and this should be part of their closing papers." He claims that absent actual receipt of the regulations at the time he purchased his unit, they were not binding upon him.

{¶ 12} We are aware of no authority for Bruce's proposition that the regulations were not binding on him because he did not receive them when he purchased his property. R.C. 5311.26(H) states that a condominium developer must provide a prospective purchaser with a disclosure statement that contains, among other things, "[a] statement of significant provisions for management of the condominium development, including * * * (4) A statement advising the purchaser that the condominium instruments are binding legal documents and describing how those instruments may be altered or amended by the unit owners association." Those "instruments" would include the condominium declaration, see R.C. 5311.06(A)(1) and any by-laws promulgated pursuant to R.C. 5311.08(B). Bruce offers no evidence to show that he was not provided with the disclosure statement, so he is presumed to have been aware of the existence of the association's by-laws and regulations at the time he purchased his property.

{¶ 13} We also conclude that Bruce, by his own admission, knew that there were by-laws in place at the time he purchased his property and before he

constructed the skate ramp, so he cannot reasonably rely on any alleged lack of notice to claim that the regulations were not binding on him. Bruce offered evidence to show that after the developer had ceded control of the association to the board of directors, the association wrote to the developer in order to secure copies of the regulations. Bruce's name appeared on the letter, so he clearly knew that the regulations existed prior to constructing the skate ramp. In any event, a letter attached to the association's complaint shows that before constructing the skate ramp, Bruce petitioned the other owners to receive approval and even included a drawing of the proposed skate ramp. By seeking prior approval from other owners, he manifested his knowledge that he would be making a significant alteration to his property in a manner that might adversely affect other owners. All of these facts would have placed a reasonable owner on notice to ensure that alterations to property were done in conformity with any rules or regulations promulgated by the association.

## IV

{¶ 14} We next consider whether the association established that a violation of its regulations occurred to invoke the attorney-fees provisions of the regulations. As part of their settlement, the parties agreed to submit to the court "the issue as to whether or not any attorneys' fees and costs shall be paid by David Bruce." Although the court ordered Bruce to pay attorney fees, it pointedly did not render a decision on whether Bruce violated any of the association's rules and further confirmed that "there was no finding by the court that defendant violated any of the association's provisions." Bruce argues that the court could not order him to pay attorney fees without first making a finding that he had violated the association's rules.

{¶ 15} There are two provisions of the association's regulations that provide for attorney fees. Code of Regulations Article III(C), Section 23(e) states:

{¶ 16} "Costs and Attorney's Fees. In any legal proceedings commenced by the Association or a committee to enforce the Declaration, this Code and/or the Rules, as said documents may be amended from time to time, the *prevailing party* shall be entitled to recover the costs of the proceeding and reasonable attorney' [sic] and paralegal fees. * * * " (Underlining sic and emphasis added.)

{¶ 17} The Code of Regulations, Article III(C), Section 23(i) also states:

{¶ 18} "Additional Enforcement Rights. Notwithstanding anything to the contrary herein contained, the Association, acting through the Board, may elect to enforce any provision of the Declaration, this Code, or the rules and regulations of the Association * * * by suit at law or equity * * *. In any such action, to the maximum extent permissible, the Owner or Occupant responsible for *the*

*violation* of which abatement is sought shall pay all costs, including reasonable attorney fees actually incurred by the Association in so acting to enforce such rights." (Underlining sic and emphasis added.)

{¶ 19} Reading these sections together, the association's regulations require two predicate findings before attorney fees may be imposed: a "violation" of the regulations and a "prevailing party." Although the terms of the settlement entered into between the parties did not specify either that Bruce committed a violation or that the association was a prevailing party, we find that both elements were sufficiently established in the record such that an actual declaration by the court was unnecessary.

{¶ 20} The association sought removal of the ramp on grounds that it violated certain provisions of its regulations. Bruce not only agreed unconditionally to remove the ramp by a certain date, he further agreed that if he did not remove the ramp in a timely manner, the association would be entitled to pursue injunctive and other legal relief against him as necessary. These conditions of the settlement show a capitulation that allows no other interpretation than that Bruce violated the association's rules. A violation was manifest under the circumstances.

{¶ 21} The circumstances likewise show the association to be the prevailing party. Bruce agreed to remove the skate ramp in conformity with the association's prayer for relief, which sought "[a] preliminary and permanent injunction requiring removal of the skate ramp from the property." In other words, Bruce's settlement in essence gave the association the exact relief that it originally sought by way of litigation.

{¶ 22} While a specific finding on both the existence of a violation and whether the association was a prevailing party would have been preferable, the record shows in every relevant sense that Bruce's maintenance of a skate ramp violated the association's rules and that the association prevailed in its attempt to force removal of the skate ramp. We therefore find that the court did not err by awarding fees to the association. The assigned error is overruled.

Judgment affirmed.

SWEENEY, A.J., and MCMONAGLE, J., concur.