[Cite as *Rosen v. Cobblestone Lane Condominium Assn. Inc.*, 2026-Ohio-1755.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

JONATHAN D. ROSEN

       Appellant/Cross-Appellee

       v.

COBBLESTONE LANE CONDOMINIUM
ASSOCIATION., INC.

       Appellee/Cross-Appellant

C.A. No.     31501

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2017 03 1220

DECISION AND JOURNAL ENTRY

Dated: May 13, 2026

STEVENSON, Judge.

**{¶1}** Plaintiff-Appellant/Cross-Appellee, Jonathan Rosen ("Rosen"), and Defendant-Appellee/Cross-Appellant, Cobblestone Lane Condominium Association ("Cobblestone") appeal from multiple trial and post-trial judgment entries of the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms in part, reverses in part, and remands for further proceedings.

I.

**{¶2}** Rosen is the former owner of a townhouse unit at Cobblestone's complex in Twinsburg, Ohio. Rosen bought the unit in December 2003 and lived in it until December 2005 when he moved to Chicago, Illinois. Thereafter he rented the unit for periods of time and had a property manager oversee it. He sold the unit on March 29, 2017. In 2016, a dispute arose between Rosen and Cobblestone over Cobblestone's alleged unwillingness to make repairs to Rosen's unit and the common areas of the facilities. Rosen alleged that water intrusion damage to the common

areas affected his unit, preventing him from renting it out and causing him to lose potential rent payments. He also claimed that Cobblestone's lack of response to his repeated requests for repairs forced him to hire contractors at his own expense.

{¶3} Following unsuccessful attempts at settlement, Rosen sued Cobblestone and its Board of Directors ("Board") under R.C. 5311.19(A) alleging breach of contract for violations of Cobblestone's declaration and bylaws, breach of fiduciary duty, and gross negligence. The breach of fiduciary duty and gross negligence claims were filed derivatively by Rosen on behalf of Cobblestone against the Board. Rosen also sought a preliminary injunction ordering the repairs to be made forthwith. His prayer for relief included a request for attorney fees and expenses.

{¶4} Rosen amended his complaint to withdraw the claim for injunctive relief. The matter proceeded through discovery and Cobblestone moved for summary judgment. In June 2019, the magistrate denied summary judgment on the breach of contract issue but granted summary judgment on the fiduciary duty and negligence claims. Both parties objected and the trial court overruled their objections.

{¶5} A jury trial was held on Rosen's breach of contract claim in May 2022. Rosen alleged damages in the amount of $49,212.96 for lost rent ($38,000) and repair costs ($11,212.96). The jury returned a verdict of $30,219.96. The magistrate entered judgment on the jury's verdict and set a hearing on attorney fees. Cobblestone moved to set aside the magistrate's order and Rosen moved for prejudgment interest in the amount of $7,675.26. The trial court overruled Cobblestone's motion to set aside, granted judgment in favor of Rosen in the amount of $30,219.96, and set a hearing on attorney fees. The court noted that the judgment was not final due to the outstanding issue of attorney fees.

{¶6} Cobblestone moved for judgment notwithstanding the verdict ("JNOV"), stating as grounds that the magistrate invaded the province of the jury by determining that an award of attorney fees was appropriate instead of submitting to the jury the question of whether Rosen was entitled to an award of fees. The magistrate denied Cobblestone's motion for JNOV and Cobblestone objected. The trial court overruled Cobblestone's objections and adopted the magistrate's decision denying the motion for JNOV.

{¶7} In March 2023 the magistrate held an evidentiary hearing on Rosen's claim for attorney fees. Rosen's counsel testified and submitted invoices through February 2023 in the amount of $272,648.08 for attorney fees, costs and expenses. Cobblestone did not oppose the hourly rate charged by Rosen's counsel and stipulated to the testimony and admissibility of the report of Rosen's expert on fees. At the conclusion of the hearing, the magistrate granted Rosen permission to file a supplemental claim for his counsel's post-trial time and expenses. Rosen supplemented his claim with an invoice in the amount of $10,314.00 for attorney fees, expenses, and his expert's bill. Cobblestone opposed Rosen's supplemental claim and Rosen moved to strike Cobblestone's opposition. Rosen included in his motion to strike an additional claim for an enhancement for the time value of money from 2016 to 2023 in the amount of $35,000. Attached to the motion was a chart setting forth the amounts billed during that time and the legal rates of interest requested.

{¶8} The magistrate denied Rosen's motion for prejudgment interest and granted Rosen attorney fees in the amount of $190,853.66. The fee award was a 30% reduction from the $272,648.08 Rosen requested at the hearing. The magistrate similarly reduced the post-hearing invoice by 30% from $10,314 to $7,219.80 for a total award of attorney fees and costs in the amount of $198,073.46. Both parties objected. The trial court adopted the magistrate's decision

but did not address Rosen's objections regarding the magistrate's denial of prejudgment interest. Rosen moved for clarification and for a supplemental order regarding prejudgment interest. Fourteen days later Rosen filed a notice of appeal and Cobblestone cross-appealed. The trial court stayed any further action on Rosen's motion to clarify or for supplemental order until the appeals were concluded. This Court stayed the appeals and remanded the matter to the trial court for a decision on Rosen's motion to clarify and for supplemental order on the issue of prejudgment interest.

{¶9} On remand, the trial court rejected the magistrate's decision and awarded Rosen prejudgment interest in the amount of $5,221.91. Rosen moved to alter or amend the judgment to correct the amount awarded, pointing to an alleged mathematical error by the trial court and asking for the award to be increased to $7,675.26 as requested in his original motion. Cobblestone responded in opposition. The docket does not reflect that the court ruled on the motion.

{¶10} Both parties renewed their appeals which were then dismissed for lack of a final appealable order because the trial court's order overruling the parties objections to the magistrate's decision regarding summary judgment did not independently enter judgment on counts two and three of Rosen's amended complaint (breach of fiduciary duty and gross negligence). On April 11, 2025, the trial court entered judgment in favor of Cobblestone as to counts two and three and dismissed both claims. Both parties timely appealed. Rosen asserts four assignments of error for our review. Cobblestone sets forth three assignments of error for our consideration. We will address Cobblestone's assignments of error first as they are determinative of whether Rosen's assignments of error are ripe for review.

II.

## Cobblestone's Appeal

### FIRST ASSIGNMENT OF ERROR:

**THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES WITHOUT FIRST ALLOWING THE JURY TO DETERMINE THE ISSUE.**

### SECOND ASSIGNMENT OF ERROR:

**THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES WHEN THE JURY DID NOT FIRST DETERMINE THAT [ROSEN] WAS ENTITLED TO RECOVER THEM UNDER R.C. 5311.19.**

{¶11} Cobblestone's first and second assignments of error will be addressed together as they raise essentially the same issue.

{¶12} In June 2021 the magistrate issued an interim order that "the jury must decide the threshold liability issue of whether [Rosen] is entitled to attorney's fees under R.C. 5311.19." A few days prior to trial, both parties submitted proposed jury interrogatories and instructions to the court that were consistent with that order. Cobblestone's proposed interrogatory number 7 asked "[d]o you find, by a preponderance of the evidence, that [Rosen] is entitled to recover reasonable attorney's fees from [Cobblestone]?" Rosen's proposed interrogatory number 5 read almost verbatim to Cobblestone's interrogatory number 7.

{¶13} After the presentation of the evidence, the magistrate conducted a colloquy with counsel outside the hearing of the jury on the issue of the interrogatories and jury instructions and stated "[s]o we struck. . . interrogatory number 7. I have already said that is not coming in, objection can be put on the record at the appropriate time." Thus, between the time that the parties submitted their proposed interrogatories and the conclusion of the trial, the magistrate reversed course from her June 2021 order for reasons that are not in the record transmitted to this Court. Cobblestone's counsel objected to the court striking interrogatory number 7, stating for cause that

he "[did not] believe that an attorney's fee award can be made in a jury trial in Ohio, unless the jury makes a specific finding that attorney's fees are to be awarded." The magistrate noted Cobblestone's objection for the record at that time and again at the conclusion of the colloquy with counsel, prior to closing arguments. Cobblestone renewed its objection again after the court's reading of the jury instructions.

{¶14} Next, the magistrate gave the jury two separate and conflicting sets of instructions. First, the magistrate stated that after deciding whether Cobblestone's breach caused Rosen to suffer damages and in what amount, the jury "must also decide *whether* [Rosen] is entitled to an award of attorneys' fees." (Emphasis added.) Four paragraphs later, the magistrate said that "[i]f you find that [Cobblestone] violated the Declaration, Bylaws or Rules and Regulations, then you *must* find that [Rosen] is entitled to an award of attorneys' fees." (Emphasis added.) Ultimately, the jury was not provided with any interrogatories as to attorney fees. The trial court's February 2024 decision reiterated the magistrate's finding that an award of fees was appropriate.

{¶15} Cobblestone begins its argument by drawing a distinction between R.C. 5311.19(A), which governs this action, and R.C. 5311.19(B), which pertains to eviction actions. Cobblestone emphasizes that R.C. 53119(A) provides in relevant part that "[v]iolations. . . shall be *grounds* for . . . any unit owner to commence a civil action for damages, injunctive relief, or both, and an award of court costs and reasonable attorney's fees in both types of action" whereas R.C. 5311.19(B)(3) uses mandatory terms and states that attorney fees "shall be charged" and "shall be the subject of a special assessment[.]" (Emphasis added.) Based on the difference in verbiage between the two sections of the statute, Cobblestone maintains that R.C. 5311.19(A) *permits*, but does not require, an award of attorney fees upon a determination of liability, and therefore, attorney fees under R.C. 5311.19(A) are not automatic, but instead are discretionary and

a matter within the sole province of the jury. Cobblestone frames the issue before us as "who decides, in a jury trial, whether a plaintiff is entitled to recover attorney fees?" Cobblestone argues that the magistrate erred and invaded the province of the jury by instructing that an award of attorney fees was mandatory upon a determination of liability and damages, thus depriving the jury of the opportunity to make that threshold determination. Cobblestone speculates that the magistrate was confused, pointing to the fact that she contradicted her own prior ruling (June 18, 2021, order) and issued two contradictory sets of jury instructions.

{¶16} Rosen counter-argues that the trial court correctly determined that he was automatically entitled to recover attorney fees under R.C. 5311.19(A) after successfully proving that Cobblestone breached its contract. Alternatively, Rosen maintains that even if the award of fees was not mandatory under the statute, it was within the court's discretion not to submit the question to the jury as there is no authority that requires it.

{¶17} "The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review." *Cromer v. Children's Hosp. Med. Ctr. of Akron,* 2015-Ohio-229, ¶ 22. "A trial court is obligated to provide jury instructions that correctly and completely state the law." *Id.* Statutory interpretation is also a matter of law that we review de novo. *Morris v. Mottern*, 2015-Ohio-4523, ¶ 16 (9th Dist.).

{¶18} In support of its argument that the jury must determine whether to award attorney fees, Cobblestone relies on several cases that allegedly stand for the proposition that liability for attorney fees is discretionary under R.C. 5311.19(A) and an issue that must be submitted to the jury. However, as outlined below, those cases are distinguishable from the instant matter and inapplicable here.

{¶19} *Digital & Analog Design Corp. v. N. Supply Co*., 63 Ohio St.3d 657, 658 (1992), involved a tort action for damages resulting from the unlawful seizure of goods. The jury awarded compensatory and punitive damages. *Id*. The trial court determined that the issue of attorney fees would not be presented to the jury and the Eighth District affirmed. *Id.* at 658. The Ohio Supreme Court reversed and held that "a trial court must submit to a jury the issue of whether attorney fees should be awarded *in a tort action[,]*" but the amount of those fees may be determined by either the judge or the jury. (Emphasis added.) *Id.* at 663. The Court reasoned that the "requirement that a party pay attorney fees. . . [was] a punitive (and thus equitable) remedy that flow[ed] from a jury finding of malice and the award of punitive damages." *Id*. at 662.

{¶20} In *Zoppo v. Homestead Ins. Co*., 71 Ohio St.3d 552 (1994) the Court revisited *Digital* in the context of a claim for bad faith and breach of contract against an insurer. The jury found in favor of the insured and awarded punitive damages. *Id.* at 553. The *Zoppo* Court held that "[a]ttorney fees may be awarded as an element of compensatory damages *where the jury finds that punitive damages are warranted.*" *Id.* at 558. (Emphasis added.) *Zoppo* rejected the reasoning in *Digital* that treated the right to a trial by jury in cases assessing attorney fees the same as the right in cases of punitive damages, stating that "[w]e believe *the right to have a jury assess punitive damages differs from the right to have a jury assess attorney fees*. With punitive damages, the right stems from common law; however, no such right existed at common law for attorney fees." (Emphasis added.) *Id*. at 557. Thus, although *Zoppo* involved a breach of contract claim, it does not support Cobblestone's position because there is no common law right to have the jury assess attorney fees as there is with the assessment of punitive damages. Moreover, the instant matter did not involve a finding of bad faith and assessment of punitive damages in the first instance.

{¶21} *QSP, Inc. v. Gibson*, 2005-Ohio-6346, ¶ 1 (8th Dist.), involved a suit for breach of a non-compete agreement. The agreement provided that if Mr. Gibson violated the agreement, he would be responsible for all attorney fees, costs and expenses. *Id*. at ¶ 14. QSP filed a motion to bifurcate the issue of liability and the issue of attorney fees, contending that the award of attorney fees and the amount of such award were matters of law for the court. *Id*. at ¶ 23. The trial court decided that the jury would determine whether attorney fees were warranted and the court would determine the amount of fees. *Id*. The jury returned a verdict in favor of QSP on the breach of contract claim and awarded compensatory damages but did not award any attorney fees. *Id*. at ¶ 28. QSP appealed, assigning as error the trial court's denial of its motion to bifurcate and permitting the jury to determine whether QSP should be given attorney fees. *Id*. at ¶ 32. QSP argued that because the jury found a breach and awarded damages, attorney fees should have been awarded under the plain language of the contract that required Mr. Gibson to be responsible for attorney fees. *Id*. at ¶ 33. However, the Eighth District never reached the merits of QSP's assignment of error because it determined that QSP invited the error and waived the issue by proposing a jury interrogatory that directed the jury to determine whether fees should be awarded and then failed to object to the instructions. *Id*. at ¶ 41. Under those circumstances, despite the language of the agreement that required Mr. Gibson to be responsible for attorney fees, the Eighth District concluded that the jury could decide whether fees were warranted. *Id*. As *QSP* was not decided on the merits, it is therefore not persuasive authority on the issue of whether fees must be decided by the jury.

{¶22} The parties also debate the applicability of *Harbour Light Condominium No. 4 v. Cavallo*, 2022-Ohio-1501 (8th Dist.). Rosen claims the magistrate changed her mind regarding the jury instructions because of *Harbour Light* and contends that it supports his position that

attorney fees are mandatory and not a jury issue. As previously noted, the record on appeal does not include any discussion about *Harbour Light*, but regardless, it is distinguishable from the instant case. *Harbour Light* did involve a request for attorney fees under R.C. 5311.19(A). *Id.* at ¶ 12. However, the issue in that case was whether the *amount* of fees awarded by the trial court following the granting of the plaintiff's motion for default judgment was appropriate; specifically, whether it was an abuse of discretion to award $0 in attorney fees when billing records were submitted reflecting work performed. *Id.* at ¶ 15-16. There was no controversy over whether the issue of fees should go to a jury because there was no jury. The Eighth District concluded that "[a]lthough the *amount* of [attorney] fees [under R.C. 5311.19(A)] is within the discretion of the trial court, awarding zero. . . is an abuse of discretion." *Id.* at ¶ 16. We do not find *Harbour Light* applicable here as it did not address whether attorney fees were mandatory or discretionary under the statute and whether they should be decided by the court or the jury. The parties are not disputing that the amount of fees is discretionary and a matter for the court to decide.

{¶23} The case of *Alcoroso v. Correll*, 2020-Ohio-4752 (8th Dist.) is perhaps the most closely related to the instant case but it supports Rosen's position, not Cobblestone's. In *Alcoroso* a former tenant brought an action against her former landlord seeking return of security deposit, double damages, and attorney fees under the landlord-tenant act, R.C. 5321.16. *Id.* at ¶ 3. Following a jury trial resulting in judgment in favor of the tenant, the Rocky River Municipal Court denied the tenant's motions to tax costs and for attorney fees, stating that it was a matter for the jury to decide, and the tenant appealed. *Id.* at ¶ 4-6. The Eighth District reversed, agreeing with the former tenant that an award of attorney fees "may be determined solely by the court and not by a jury." *Id.* at 21.

{¶24} In sum, all the cases cited by Cobblestone as supporting its argument are distinguishable from the instant matter, and the case most on point supports Rosen's argument. Keeping in mind that our standard of review is de novo, Cobblestone has not demonstrated that the jury instruction was legally incorrect, not factually warranted, did not correctly and completely state the law, and thus, constituted error. *See Cromer*, 2015-Ohio-229, at ¶ 22. Further, attorney fee awards did not exist under the common law and therefore the question of attorney fees under R.C. 5311.19 is not required to be submitted to the jury. *See generally Zoppo*, 71 Ohio St.3d 552.

{¶25} Cobblestone also argues that Rosen invited this alleged error and thus waived his claim on appeal for a new trial on attorney fees. Cobblestone maintains that Rosen did so "by insisting that attorney fees were mandatory, and in failing to request the jury to answer an interrogatory as to whether attorney fees should be awarded." However, the portion of the transcript that Cobblestone references in support of its argument pertains to the discussion between the magistrate and counsel regarding the *jury verdict form*, not the interrogatories on whether the jury should award fees. After the magistrate affirmed her previous decision to withdraw the issue of fees from the jury and not submit interrogatory number 7, Rosen's counsel suggested that she add clarifying language to the jury verdict form stating that the award of damages did not include fees to conform with her ruling and because there were no interrogatories pertaining to fees. Rosen's suggestion was not an insistence that fees should be mandatory as the magistrate had already decided that issue. Furthermore, as previously noted, Rosen originally proposed an interrogatory that would have given the question of fees to the jury. The magistrate agreed that without clarifying language there could be potential confusion on the jury's part, and thus, with the consent of both counsel added language to the verdict form stating in parenthesis that "[t]his

amount does not include Attorney fees." Moreover, even if Rosen had been "insisting" that fees should be mandatory, that position is consistent with his argument here on appeal.

{¶26} Accordingly, Rosen neither invited nor waived any alleged error simply because he requested that the language on the verdict form conform to the magistrate's ruling on the interrogatory that attorney fees were not included in the verdict. In conclusion, Cobblestone has not shown that the trial court erred as a matter of law in awarding attorney fees under R.C. 5311.19(A) without first allowing the jury to determine whether fees were appropriate. Cobblestone's first and second assignments of error are overruled.

## THIRD ASSIGNMENT OF ERROR:

### THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES UNDER R.C. 5311.19(A) TO A NONPREVAILING PARTY.

{¶27} In her August 21, 2023, decision on attorney fees, the magistrate found that Rosen was the prevailing party in the case, even though the other two claims were dismissed or judgment was granted against him. The trial court overruled Cobblestone's objection and adopted the magistrate's decision that Rosen was the prevailing party.

{¶28} The parties agree that under R.C. 5311.19 (A), attorney fees may only be awarded to the prevailing party. Cobblestone argues that Rosen is the nonprevailing party and should not have been awarded any attorney fees. Cobblestone asks this Court to vacate the award of fees. In support, Cobblestone argues as follows:

> [Rosen] asserted three claims for relief against two named defendants, Cobblestone and the board of directors (named collectively). The trial court granted summary judgment in favor of both Cobblestone and the [B]oard on the two derivative claims, leaving only Count I for trial. Thus, two-thirds of Mr. Rosen's claims were disposed of by summary judgment.
>
> Mr. Rosen proceeded to trial on one claim against two defendants, Cobblestone and the [B]oard. One of those defendants, the [B]oard, was dismissed during the trial. J.E. of Jan 12, 2025. The remaining one sixth of [Rosen's] claims, the breach of

contract claim against Cobblestone, resulted in a judgment for $30,219.96, less than the amount of the pretrial offer ($40,000.00). Mr. Rosen thus did not prevail at trial.

. . .

The remaining claim resulted in a judgment against one defendant, for an amount less than [Rosen] would have received if he had elected to settle instead of proceeding to trial.

Mr. Rosen was not the prevailing party.

{¶29} We have previously held that "[a] prevailing party is generally the party 'in whose favor the decision or verdict is rendered and judgment entered.'" *Moga v. Crawford*, 2008-Ohio-2155, ¶ 6 (9th Dist.), quoting *Hagemeyer v. Sadowski*, 86 Ohio App.3d 563, 566 (6th Dist. 1993), quoting *Yetzer v. Henderson*, 1981 WL 6293, *2 (5th Dist. June 4, 1981). Additionally, in *Moga*, this Court agreed with the Eleventh Appellate District's definition of the prevailing party:

> "'The party to a suit who successfully prosecutes the action or successfully defends against it, *prevailing on the main issue*, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered. . . . This may be the party prevailing in interest, and not necessarily the prevailing person. To be such *does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who had made a claim against the other, has successfully maintained it*.'"

(Emphasis added.) *Moga* at ¶ 6, quoting *Lehto v. Sankey*, 2001 WL 735898, *7 (11th Dist. June 29, 2001), quoting *Woodfork v. Jones*, 1997 WL 71820, *6 (2d Dist. Feb. 21, 1997).

{¶30} Cobblestone's argument is essentially that the court should have applied a mathematical formula to the number of claims made by Rosen (6) versus the number of claims decided in his favor (1), but that argument is not supported by the applicable law. The one and only claim that was tried to the jury, and thus the main issue - the breach of contract claim - resulted in a verdict against Cobblestone. Thus, even though Rosen did not prevail on summary judgment regarding the two derivative claims - breach of fiduciary duty and gross negligence - "at the end

of the suit" Rosen "prevail[ed] on the main issue[.]" *Moga* at ¶ 6. In addition, at the fee hearing, Rosen's counsel explained that all three claims had a common core of facts and that the claims were intertwined. He stated that his breach of contract claim relied on the same operative facts as the two derivative claims that were dismissed. *See Edlong Corp. v. Nadathur*, 2013-Ohio-1283, ¶ 16 (1st Dist.) ("where multiple claims are rooted in the same allegations, facts, discovery, and legal arguments, a trial court does not abuse its discretion in awarding attorney fees for the time spent on the claims."). Therefore, it was proper for the trial court to treat the total number of hours expended on all the claims as the basis for Rosen's claim for attorney fees.

**{¶31}** Accordingly, based on the foregoing, the trial court did not abuse its discretion in concluding that Rosen was the prevailing party and was entitled to attorney's fees under R.C. 5311.19(A). Cobblestone's third assignment of error is overruled.

### Rosen's Appeal

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN REDUCING THE FEE APPLICATION OF [ROSEN'S] COUNSEL BY 30% WITHOUT JUSTIFICATION IN LAW OR FACT.**

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN FAILING TO ISSUE FINDINGS SUFFICIENT ENOUGH FOR THIS COURT TO MAKE A DETERMINATION OF THE APPROPRIATENESS OF THE AWARD.**

**{¶32}** Rosen's first and third assignments of error will be addressed together as they raise essentially the same issue. Here, Rosen argues that the trial court's 30% reduction of his fee application was improper and inconsistent with controlling law. We agree.

**{¶33}** We review a trial court's award of attorney fees for an abuse of discretion. *Bittner v. Tri-County Toyota, Inc.,* 58 Ohio St.3d 143, 146 (1991). An abuse of discretion "implies that

the court's attitude is unreasonable, arbitrary[,] or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When reviewing for an abuse of discretion, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶34} In its decision overruling Rosen's objections to the magistrate's decision regarding his attorney fees, the trial court concluded as follows:

> Reviewing the fee bills submitted by [Rosen], the total amount of attorney fees submitted to the Court was $272,648.08. While recognizing this case took seven years to come to fruition, this Court also finds that there is evidence of duplicative billing and excessive attorney communications. "It is permissible for the Court to reduce an attorney fee bill by 30% when, after review, the court found "excessive communication between attorneys" and "attorneys reviewing each other's work." *State ex rel. Stafford v. Carpenter*, 2022-Ohio-3848, ¶ 29. As evidenced by the examples previously cited, this Court finds that [Rosen's counsel] billed for reviewing the same pleadings as well [as] other document review and drafting, which resulted in duplicative billing for legal work that is commonplace. Additionally, this Court finds [Rosen's counsel] held numerous meetings to discuss the case, which resulted in billing numerous hours for communications between the attorneys for common litigation issues which a reasonable attorney would not require. Accordingly, this Court adopts the Magistrate's calculations and reduces the attorney fee total of $272,648.08 by 30%. Therefore this Court awards reasonable attorney fees in the amount of $198,073.46, finding it to be fair and equitable.

(Footnote omitted.).

{¶35} *Bittner* is the leading case in Ohio when calculating attorney fees. In *Bittner*, the Ohio Supreme Court set forth a two-part test for determining a reasonable attorney fee award. *Bittner* at 145. The first part of the test requires the court, as a starting point, to follow the lodestar method which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides . . . an initial estimate of the value of the lawyers.'" *Id.*, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[T]here is a strong presumption that the [lodestar calculation] is the proper amount for an attorney-fee award."

*Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, ¶ 19. Under part two of the *Bittner* test, the trial court may then adjust the fee upward or downward based on the factors listed in what is now Prof. Cond. R. 1.5(a). *Bittner* at syllabus; *Phoenix Lighting* at ¶ 16.

These factors are:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) Whether the fee is fixed or contingent.

*Phoenix Lighting* at ¶ 12.

{¶36} "A trial court has discretion to modify the presumptive calculation of an attorney-fee award. . . but any modification must be accompanied by a rationale justifying the modification." *Id*. at ¶ 20. Changes to the lodestar should be made only when a party proves that modification is warranted based on "a factor not already subsumed in the lodestar calculation." *Id*. at ¶ 19.

{¶37} Here, the trial court noted concern with the attorneys reviewing the same work, finding that it led to some double billing. The trial court's rationale in reducing Rosen's counsel's attorney fees by 30% was that a 30% reduction was also granted in *Stafford v. Carpenter*, 2022-

Ohio-3848 (2d Dist.) where there was some double billing involved. In *Stafford*, the Second Appellate District concluded that the trial court did not unreasonably apply a 30% reduction where the case was "overstaffed[,]" "lingered too long[,]" was "over-litigated" and had "excessive communication between attorneys, attorneys reviewing each other's work, and reviewing social-media posts and other things unrelated to the. . . claims." *Stafford* at ¶ 29, 30, 33. The trial court in the instant case concluded that because a 30% reduction was appropriate in *Stafford* under what it considered to be similar circumstances, the same reduction was wholesale appropriate in this case. What is troublesome about that is the trial court's rationale in making the reduction did not include any analysis of the factors in Prof. Cond. R. 1.5(a) as required by *Bittner* and *Phoenix Lighting*. Instead, it baldly applied *Stafford*. Furthermore, while the court cited a few examples of what it found to be double billing, it made an across-the-board 30% reduction rather than identifying specific charges that it considered to constitute double billing and applying the reduction only to those charges. While we do not require a trial court to undertake a line by line review of every attorney fee request, it must also do more than cite a few examples of duplicate work in the total amount of .9 hours to justify a reduction of over $70,000.

{¶38} During oral argument, Cobblestone's counsel conceded that the court's rationale contained insufficient detail. Accordingly, based on the foregoing, Rosen's first and third assignments of error are sustained and the issue of the amount of attorney fees is reversed and remanded to the trial court.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN CALCULATING THE AMOUNT OF PREJUDGMENT INTEREST.**

{¶39} Here, Rosen is asking us to correct what he believes is a simple mathematical error by the trial court in its calculation of prejudgment interest, specifically the portion pertaining to

lost rent.  Rosen's claim for damages against Cobblestone was $49,212.96.  He alleged lost rent of $38,000 and repair costs of $11,212.96.  However, the jury's award was for the lesser amount of $30,219.96. According to Rosen's motion for prejudgment interest, during an off-the-record conversation with juror number 5 after the trial, his counsel was informed that the verdict represented the amount Rosen requested less one-half of the lost rent. Thus, Rosen presumed as the basis for his motion for prejudgment interest that the jury's verdict was comprised of $11,212.96 in repair costs per his request, and $19,000 in lost rent (one-half of $38,000).

{¶40}  Rosen points out that in his motion he requested prejudgment interest on the full amount of the repair costs ($2,768.56) and on one-half of the lost rent ($4,906.70) for a total of $7,675.26, which was consistent with the presumed apportionment of the jury's verdict.  Attached to his motion is a spreadsheet itemizing the cost of repairs, lost rent, and interest from 2015 through July 2022.  He argues on appeal that the trial court erred by further reducing the interest on the lost rent by one-half again, from $4,906.70 to $2,453.35, despite the court's finding that the jury's award  "represented the repair costs and *half* of the lost rental income claimed by [Rosen]" and that Rosen's calculations of prejudgment interest were "in accordance with the rates set forth in [the controlling statute]." (Emphasis added.)  The court awarded Rosen a total of $5,221.91 instead of the requested amount of $7,675.26.  He asks this Court to correct the trial court's error and award him prejudgment interest of $7,675.26.

{¶41}  Cobblestone counter-argues that Rosen's request for a correction should be overruled because the trial court's order is based on hearsay and the presumption that the jury's award represented Rosen's repair costs and half of his lost rent claim rather than on evidence of record as to how the jury reached the result that it did, *i.e.,* the jury was not asked to answer any interrogatories apportioning Rosen's damages.

**{¶42}** First, Rosen's motion for prejudgment interest and request for correction is based on an off-the-record conversation with a juror that is not part of the evidentiary record in this appeal. Second, while the court found that the verdict represented one-half of lost rental income, it does not explain how it arrived at that conclusion. Nor did the court explain how it calculated prejudgment interest of $5,221.91 rather than $7,675.26 per Rosen's motion when the court specifically acknowledged that Rosen's calculations were in accordance with the applicable statute.

**{¶43}** The trial court erred for the reasons stated above. Rosen's second assignment of error is sustained and the matter is remanded.

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED IN FAILING TO AWARD ANY AMOUNT AS AN ENHANCEMENT FOR THE TIME VALUE OF MONEY FROM 2016 TO PRESENT.**

**{¶44}** Under this assignment of error, Rosen asks this Court to award him an enhancement in the amount of $35,000 to reflect the time value of money during the years 2016-2023, or in the alternative, to remand the case back to the trial court for a determination. As previously noted, Rosen made this request for an enhancement in his motion to strike Cobblestone's response to his supplemental claim for fees following the March 2023 fee hearing. However, the magistrate did not rule on Rosen's request in her order granting Rosen attorney fees and addressing his supplemental claim. Although Rosen objected to the magistrate's decision, his objection did not challenge the magistrate's failure to rule on his request for an enhancement, nor did he request a supplemental or other corrective order. "As this Court has consistently held, 'when a party fails to properly object to a magistrate's decision in accordance with Civ.R. 53(D)(3), the party has forfeited the right to assign those issues as error on appeal.'" *Drouhard v. Drouhard*, 2017-Ohio-

7305, ¶ 20 (9th Dist.).   Therefore, Rosen has forfeited this assignment of error for failure to properly raise the issue in the trial court.  He has not argued plain error, and we will not develop that argument for him. *State v. Piatt,* 2020-Ohio-1177, ¶ 25 (9th Dist.).  Rosen's fourth assignment of error is overruled.

III.

**{¶45}**   Based on the foregoing, Cobblestone's assignments of error are overruled.  Rosen's first, second, and third assignments of error are sustained, and his fourth assignment of error is overruled.  The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this decision.

Judgment affirmed in part,<br>reversed in part,<br>and cause remanded

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee/Cross-Appellant.


_____
SCOT STEVENSON
FOR THE COURT



HENSAL, P. J.
CONCURS.

SUTTON, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

ROBERT D. KEHOE and KEVIN P. SHANNON, Attorneys at Law, for Appellant/Cross-Appellee.

ADAM E. CARR, Attorney at Law, for Appellee/Cross-Appellant.